UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 1:12-cv-01103-JMS-TAB |
| | ) | |
| MARZELLA K. HIATT AND JACOB A. HIATT, | ) | |
| *Defendants.* | ) | |

**ORDER**

Presently pending before the Court is the United States of America's (the "Government") Motion for Summary Judgment. [Filing No. 42.] Defendant Jacob Hiatt failed to respond to the Government's motion and the time for doing so has passed. Unlike Mr. Hiatt, Defendant Marzella Hiatt responded, but her response is essentially a request that the Court reconsider its previous Order denying Ms. Hiatt additional discovery under Federal Rule of Civil Procedure 56(d). [Filing No. 72.] The Court begins by addressing Ms. Hiatt's request for reconsideration. After concluding that reconsideration is unwarranted, the Court turns to the merits of the Government's Motion for Summary Judgment. For the reasons explained below, the Government's Motion for Summary Judgment is **GRANTED**. [Filing No. 42.]

I.
**MOTION TO RECONSIDER**

The Government filed the instant case seeking to collect from Ms. Hiatt tax liability it claims she owes. It moved for summary judgment on February 21, 2014. [Filing No. 42.] Mr. Hiatt did not respond to the Government's motion at all. Ms. Hiatt filed a response, but did not address the merits of the Government's motion, arguing instead that she needed additional discovery pursuant to Federal Rule of Civil Procedure 56(d) because her former attorney failed to

1

conduct discovery in the case. [Filing No. 67.] The Court concluded that Ms. Hiatt was not entitled to discovery under Rule 56(d) because: (1) she had ample time to conduct discovery in the case and must be held to the consequences of her former attorney's failure to conduct discovery; and (2) she did not identify the facts essential to her opposition of summary judgment that further discovery would likely reveal. [Filing No. 71 at 3-5.] The Court, however, provided Ms. Hiatt another opportunity to respond to the merits of the Government's motion. [Filing No. 71 at 6.]

Instead of taking her additional opportunity to respond to the merits of the Government's motion, Ms. Hiatt essentially reasserts her request for additional discovery under Rule 12(d). [Filing No. 72 at 4-7.] The Government argues that Ms. Hiatt's response should be treated as a motion to reconsider the Court's previous denial of additional discovery. [Filing No. 73 at 1-2.] The Court agrees, as Ms. Hiatt's response focuses entirely on whether she is entitled to further discovery. [*See, e.g.*, Filing No. 72 at 7 ("Accordingly, pursuant to Rule 56(d), Marzella Hiatt respectfully responds to the [Government's] Motion for Summary Judgment and the Court's order by stating that she cannot adequately respond to the motion unless she is able to obtain discovery regarding the actual existence of the assessments.").]

Fed. R. Civ. P. 60(b)(6) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding." Under Rule 60(b), reconsideration is appropriate only "where the court has misunderstood a party, where the court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law occurred, or where significant new facts have been discovered." *Nerds On Call, Inc. (Ind.) v. Nerds On Call, Inc. (Cal.)*, 598 F.Supp.2d 913, 916 (S.D. Ind. 2008). "Relief under Rule 60(b) is an extraordinary remedy and is granted only in exceptional circumstances." *Rickabaugh v. Stanley*

*Steemer of Evansville, Inc.*, 2012 WL 738588, \*1 (S.D. Ind. 2012) (citing *Eskridge v. Cook Cnty.*, 577 F.3d 806, 809 (7th Cir. 2009)). Arguments that the court has already considered and rejected "should be directed to the court of appeals." *United States v. ITT Educ. Servs.*, 2012 WL 266943, \*8 (S.D. Ind. 2012).

Ms. Hiatt did not point to any of the above bases for reconsideration. Instead she asserts that she needs additional discovery to gain access to the Government's record of assessment against her, including the RACS 006 and RACS 025 forms. [Filing No. 72 at 4-5.] Moreover, Ms. Hiatt argues that "her attorney failed to represent her in this case" and the Court was wrong to rely on *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 396 (1993), as creating a "hard and fast rule" that clients must be held accountable for the acts and omissions of their freely chosen attorneys. [Filing No. 72 at 6-7.] To do so, Ms. Hiatt continues, would "seriously mar[] the integrity of the judicial system" by "telling the public that it will allow attorneys to openly violate professional standards and hold the client responsible for actions beyond her control." [Filing No. 72 at 7.]

The Government responds that Ms. Hiatt is not entitled to the Government's record of assessment, and that in any event, it would not assist her in her defense. [Filing No. 73 at 2-5.] Furthermore, the Government argues that the Court correctly held Ms. Hiatt accountable for her former attorney's failure to conduct discovery. [Filing No. 73 at 5-8.]

The Court concludes that Ms. Hiatt is not entitled to reconsideration of the Court's previous Order denying her additional discovery for two distinct reasons. First, she has not pointed to a recognized basis for which reconsideration is proper—namely, that "the court has misunderstood a party, . . . made a decision outside the adversarial issues presented to the court by the parties, . . . made an error of apprehension (not of reasoning), [pointed to a] change in the law . . . , or [cited]

new facts [that] have been discovered." *Nerds On Call, Inc. (Ind.)*, 598 F.Supp.2d at 916. Instead, she attempts to cure a deficiency in her previous Rule 56(d) request—her failure to point to facts discovery would reveal that are essential to her opposition. But this is not a recognized basis to reconsider the Court's previous ruling; a motion for reconsideration does not provide Ms. Hiatt with an opportunity to satisfy the requirements of a Rule 56(d) request that she could have satisfied as part of her initial request.

Second, even if the Court was willing to allow Ms. Hiatt to cure her deficient Rule 56(d) request in this manner, it would not change the Court's previous conclusion that she had ample time to conduct discovery and that she is held to the consequences of her attorney's failure to do so. [*See* Filing No. 71 at 3-4.] Ms. Hiatt asserts that this Court's ruling as such "seriously mars the integrity of the judicial system." [Filing No. 72 at 7.] But she ignores the fact that the Seventh Circuit has relied on the very authority cited by this Court in its Order—*Pioneer Investment Services Co.*—to hold that "'[c]lients must be held accountable for the acts and omissions of their attorneys.'" *Easley v. Kirmsee*, 382 F.3d 693, 699 (7th Cir. 2004) (quoting *Pioneer Inv. Servs.*, 507 U.S. at 396); *see also U.S. v. 8136 S. Dobson St., Chi., Ill.*, 125 F.3d 1076, 1084 (7th Cir. 1997) ("[A] client is bound by his chosen agent's deeds, whether it be negligence, gross negligence, or even wilful conduct."). Contrary to Ms. Hiatt's position otherwise, this is true even when an attorney's conduct may violate the rules of professional responsibility. *See Easley*, 382 F.3d at 699 (recognizing that the plaintiff's "attorney's conduct fell vastly short of meeting his required level of professional responsibility in this case. But [the plaintiff] cannot employ her attorney's unprofessional conduct as a mechanism for reopening her cause of action against the defendants"). This is not to say, as Ms. Hiatt implies, that litigants such as Ms. Hiatt have no remedy when their attorney's improper actions are detrimental to their case; the remedy, however,

4

"is a malpractice action against the attorney."[1] *Martinez v. City of Chicago*, 499 F.3d 721, 728 (7th Cir. 2007); *see Tango Music, LLC v. DeadQuickMusic, Inc.*, 348 F.3d 244, 247 (7th Cir. 2003) ("If a party's lawyer is guilty of professional malpractice . . . , the party has a remedy against him, but it should not be permitted to shift the burden of its agent's neglect to the district court and the defendants."). Accordingly, the Court will not revisit its ruling that Ms. Hiatt had ample time to conduct discovery in this case and thus is not entitled to further discovery merely because her former attorney failed to pursue it during the allotted time for discovery. *See Easley*, 382 F.3d at 699-700 ("The trial judge was entitled to expect [the plaintiff] and her counsel to comply with his clear and straightforward pretrial scheduling orders and filing deadlines, and when compliance was not forthcoming, the trial judge was empowered to end the litigation by ruling on the merits of the defendants' unopposed motions for summary judgment . . . . It is regrettable that [the plaintiff], either through her own or her attorney's negligence, or perhaps a combination of both, may very well have missed an opportunity to pursue what may possibly have been a meritorious cause of action . . . . However, [c]lients must be held accountable for the acts and omissions of their attorneys.") (alteration in original) (citation and quotation marks omitted).

For either of these reasons, Ms. Hiatt's request that the Court reconsider its earlier Order denying her additional discovery under Rule 56(d) is denied. However, the Court also wishes to acknowledge that the Government is correct to point out, as the Court did in its initial Order, that "whatever [Ms.] Hiatt's former attorney may have failed to do, her new attorney has had ample opportunity to defend her interests in this action, having over three months from his initial appearance on May 14, 2014, to review and respond to the United States' motion for summary

---

[1] The Court's statement should not be construed as a determination that Ms. Hiatt's former attorney acted improperly. The Court need not and does not take a view on the matter.

5

judgment." [Filing No. 73 at 7.] Not only has her current attorney had ample time to respond, the Government provided him with all of the non-privileged documents in the possession of the IRS that were relevant to Ms. Hiatt's defense. [Filing No. 68-1 at 1-2.] Ms. Hiatt has ignored this fact entirely in arguing that it would be inequitable to require her to respond to the Government's Motion for Summary Judgment without further discovery. For this additional reason, the Court will not reconsider its previous decision denying Ms. Hiatt additional discovery.

Having denied Ms. Hiatt's renewed request for further discovery under Rule 56(d), the Court turns next to the Government's pending Motion for Summary Judgment.

## II.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

# III.
## BACKGROUND

The Government's Motion for Summary Judgment is essentially unopposed. Mr. Hiatt failed to file a response to the Government's motion altogether, and Ms. Hiatt did not respond to the merits of the Government's motion, let alone contest the Government's version of the facts. By not responding to the Government's motion and thereby leaving the Government's facts undisputed, Defendants concede the Government's version of the facts. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *see also Brasic v. Heinemann's Inc.*, 121 F.3d 281, 286 (7th Cir. 1997) ("We repeatedly have sustained entry of summary judgment where the nonmovant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts.") (citation and quotation marks omitted). Therefore, the following factual background is taken directly from the Government's undisputed facts. [Filing No. 43 at 3-10.]

### A. Ms. Hiatt's Tax Liabilities

Ms. Hiatt did not file a valid income tax return with the Internal Revenue Service ("IRS") for the taxable years 1996 through 2006. [Filing No. 42-1 at 1.] For the 1999, 2000, 2001, and 2002 income tax years, although entries in the IRS records list "returns" as having been filed, the IRS determined that a valid return was not filed and there was therefore no assessment of a tax debt associated with such entries. [Filing No. 42-1 at 1; Filing No. 42-6; Filing No. 42-7; Filing No. 42-8; Filing No. 42-9.] The IRS Forms 1040 Ms. Hiatt filed for the 1999, 2000, and 2002 taxable years listed only "zeros" for income and each included an attachment setting forth various frivolous arguments for why she was allegedly not legally required to pay federal income taxes. [Filing No. 42-4; Filing No. 42-5; Filing No. 42-6.] For all of the taxable years at issue, the tax

assessments were not based on any return, but rather upon a tax liability determined by the IRS pursuant to IRS deficiency procedures. [Filing No. 42-1 at 1.]

For each of the income tax years at issue, the IRS performed an examination, concluded that Ms. Hiatt had gross income derived from her insurance sales business in Sheridan, Indiana, and from other payments made to Ms. Hiatt that were reported to the IRS through Forms 1099, and that there were tax deficiencies with respect to those taxable years. [Filing No. 42-1 at 2.] The IRS properly sent notices of deficiency for all of the income tax years at issue, and the assessments at issue, described below, are based on those examinations and notices of deficiencies. [Filing No. 42-1 at 2.].

A delegate of the Secretary of the Treasury made assessments against Ms. Hiatt for income taxes, penalties, and interest on the dates, in the amounts, and for the tax years set forth in the table below.

| Tax Year | Assessment Date | Assessment Type | Assessment Amount |
|---|---|---|---|
| 1996 | 06/12/2000 | Tax | $35,495.00 |
|  | 06/12/2000 | Late filing penalty | $7,986.38 |
|  | 06/12/2000 | Estimated tax penalty | $1,889.22 |
|  | 06/12/2000 | Interest | $11,791.84 |
|  | 04/03/2006 | Failure to pay penalty | $7,969.74 |
| 1997 | 04/15/2004 | Tax | $43,739.00 |
|  | 04/15/2004 | Accuracy-related penalty | $8,747.80 |
|  | 04/15/2004 | Interest | $27,307.54 |
|  | 04/03/2006 | Failure to pay penalty | $9,622.58 |
|  | 04/02/2007 | Failure to pay penalty | $1,312.17 |
| 1998 | 02/09/2004 | Tax | $41,533.00 |
|  | 02/09/2004 | Estimated tax penalty | $1,900.47 |
|  | 02/09/2004 | Late filing penalty | $9,344.93 |
|  | 02/09/2004 | Interest | $20,156.97 |
|  | 02/09/2004 | Failure to pay penalty | $10,383.25 |
|  | 04/15/2004 | Accuracy-related penalty | $8,248.20 |
|  | 04/15/2004 | Interest | $3,993.46 |
| 1999 | 09/08/2003 | Tax | $48,741.00 |
|  | 09/08/2003 | Late filing penalty | $12,185.25 |
|  | 09/08/2003 | Interest | $16,195.36 |

|      | 04/03/2006 | Failure to pay penalty   | $12,185.25 |
|------|------------|--------------------------|------------|
| 2000 | 06/23/2003 | Tax                      | $40,439.00 |
|      | 06/23/2003 | Accuracy-related penalty | $8,088.00  |
|      | 06/23/2003 | Interest                 | $7,056.67  |
|      | 04/03/2006 | Failure to pay penalty   | $10,109.74 |
| 2001 | 03/01/2004 | Tax                      | $42,089.00 |
|      | 03/01/2004 | Estimated tax penalty    | $1,682.03  |
|      | 03/01/2004 | Late filing penalty      | $9,470.02  |
|      | 03/01/2004 | Interest                 | $5,244.93  |
| 2002 | 12/13/2004 | Tax                      | $47,478.00 |
|      | 12/13/2004 | Accuracy-related penalty | $9,495.60  |
|      | 12/13/2004 | Interest                 | $4,476.17  |
| 2003 | 07/04/2005 | Tax                      | $50,623.00 |
|      | 07/04/2005 | Estimated tax penalty    | $1,324.81  |
|      | 07/04/2005 | Late filing penalty      | $11,390.18 |
|      | 07/04/2005 | Interest                 | $3,897.03  |
|      | 07/04/2005 | Failure to pay penalty   | $3,796.72  |
| 2004 | 08/20/2007 | Tax                      | $39,764.00 |
|      | 08/20/2007 | Estimated tax penalty    | $1,154.22  |
|      | 08/20/2007 | Late filing penalty      | $8,946.90  |
|      | 08/20/2007 | Interest                 | $9,091.85  |
|      | 08/20/2007 | Failure to pay penalty   | $5,765.78  |
| 2005 | 09/03/2007 | Tax                      | $4,868.00  |
|      | 09/03/2007 | Estimated tax penalty    | $195.30    |
|      | 09/03/2007 | Late filing penalty      | $1,095.30  |
|      | 09/03/2007 | Interest                 | $685.49    |
|      | 09/03/2007 | Failure to pay penalty   | $413.78    |
| 2006 | 06/23/2008 | Tax                      | $3,412.00  |
|      | 06/23/2008 | Late filing penalty      | $767.70    |
|      | 06/23/2008 | Interest                 | $385.18    |
|      | 06/23/2008 | Failure to pay penalty   | $255.90    |

[Filing No. 42-1 at 2-3.]

On the date of each tax assessment described above, a delegate of the Secretary of Treasury sent notice of the assessment and demand for payment to Ms. Hiatt. [Filing No. 42-1 at 2-3.] Despite such notice and demand, Ms. Hiatt failed to fully pay the amounts of the liabilities associated with the assessments listed above. [Filing No. 42-1 at 3.]

A delegate of the Secretary of the Treasury made assessments against Ms. Hiatt pursuant to 26 U.S.C. § 6702 on the dates, in the amounts, and in regard to the income tax periods set forth in the table below.

| Tax Year | Assessment Date | Assessment Type | Assessment Amount |
|---|---|---|---|
| 1999 | 07/08/2002 | Penalty for filing frivolous tax return | $500.00 |
| 2000 | 12/23/2002 | Penalty for filing frivolous tax return | $500.00 |
| 2002 | 10/13/2003 | Penalty for filing frivolous tax return | $500.00 |
| 2003 | 09/13/2004 | Penalty for filing frivolous tax return | $500.00 |
| 2004 | 2/27/2006 | Penalty for filing frivolous tax return | $500.00 |
| 2005 | 9/11/2006 | Penalty for filing frivolous tax return | $500.00 |
| 2006 | 10/22/2007 | Penalty for filing frivolous tax return | $500.00 |

[Filing No. 42-1 at 5.]

On the date of each assessment described above, a delegate of the Secretary of Treasury sent notice of the assessment and demand for payment to Ms. Hiatt. [Filing No. 42-1 at 5.] Despite such notice and demand, Ms. Hiatt failed to fully pay the amounts of the liabilities associated with the assessments listed above. [Filing No. 42-1 at 5.]

Ms. Hiatt filed a petition for relief under Chapter 7 of the Bankruptcy Code, *In re Marzella Hiatt*, Bankr. No. 13-1675-RLM-7 (Bankr. S.D. Ind.), on February 28, 2013. The bankruptcy court entered a discharge under 11 U.S.C. § 727 in that case on June 12, 2013.

After application of all credits, payments, and abatements, the balance due for the federal income tax liabilities of Ms. Hiatt set forth above, excluding the 1996 taxable year (which the Government has declined to pursue), including all statutory additions, penalties, and interest, is $956,253.71, as of February 18, 2014, (plus statutory addition, penalties, and interest, accruing from and after that date,)computed as follows:

| Tax Year | Balance Due as of February 18, 2014 |
|---|---|
| 1997 | $137,815.63 |
| 1998 | $155,913.39 |
| 1999 | $114,439.80 |

| | |
|---|---|
| 2000 | $108,740.80 |
| 2001 | $106,455.97 |
| 2002 | $109,113.08 |
| 2003 | $117,899.98 |
| 2004 | $89,011.70 |
| 2005 | $10,287.46 |
| 2006 | $6,575.90 |
| Total | $956,253.71 |

[Filing No. 42-1 at 4.]  Federal tax liens against Ms. Hiatt secure such amount.

After application of all credits, payments, and abatements, the balance due for the 26 U.S.C. § 6702 liabilities of Ms. Hiatt set forth above is $11,233.80, as of February 18, 2014, plus interest, accruing from and after such date, computed as follows:

| Tax Year | Balance Due as of February 18, 2014 |
|---|---|
| 1999 | $897.58 |
| 2000 | $944.56 |
| 2002 | $908.33 |
| 2003 | $577.76 |
| 2004 | $735.07 |
| 2005 | $706.53 |
| 2006 | $6,463.97 |
| Total | $11,233.80 |

[Filing No. 42-1 at 5-6.]  Federal tax liens against Ms. Hiatt secure such amount.

Notwithstanding her discharge under 11 U.S.C. § 727, Ms. Hiatt remains personally liable to the United States for the federal income taxes (and the interest thereon) in the amount of $694,938.41, as of February 18, 2014, plus interest, accruing from and after such date, computed as follows:

| Tax Year | Balance Due as of February 18, 2014 |
|---|---|
| 1996 | $37,063.25 |
| 1997 | $100,291.78 |
| 1998 | $95,334.93 |
| 1999 | $70,777.83 |
| 2000 | $78,237.44 |
| 2001 | $76,061.02 |
| 2002 | $81,036.29 |

| 2003 | $82,595.02 |
| 2004 | $61,849.77 |
| 2005 | $7,092.52 |
| 2006 | $4,598.56 |
| Total | $694,938.41 |

[Filing No. 42-2 at 1-2.]

### B. The Three Sheridan Properties

Via a document titled "Warranty Deed" and recorded on January 27, 1969, with the Boone County Recorder's Office at Book 187, Page 227, Max S. Haimes and Eileen L. Haimes conveyed title to the North State Road Property (the "North State Road Property") to Jacob A. Hiatt and Marzella Kay Hiatt, as husband and wife. [Filing No. 12 at 7.]

Via a document titled "Quitclaim Deed" and recorded on May 19, 2008, with the Boone County Recorder's Office, Ms. Hiatt conveyed her one-half interest in the North State Road Property to Mr. Hiatt. [Filing No. 12 at 7.] There is no evidence that Mr. Hiatt provided any consideration to Ms. Hiatt in connection with such transfer.

Via a document entitled "Warranty Deed" and recorded on November 6, 1992, with the Hamilton County Recorder's Office, James David Woodrum and Janice M. Woodrum conveyed title to the South Main Street Property (the "South Main Street Property") to Marzella K. Hiatt and Jacob A. Hiatt, wife and husband. [Filing No. 12 at 7-8.]

Via a document entitled "Quitclaim Deed" and recorded on March 9, 2010, with the Hamilton County Recorder's Office, Ms. Hiatt conveyed her one-half interest in the South Main Street Property to Mr. Hiatt. [Filing No. 12 at 8-9.] There is no evidence that Mr. Hiatt provided any consideration to Ms. Hiatt in connection with such transfer.

Via a document entitled "Executrix' Deed" and recorded on January 3, 2001, with the Hamilton County Recorder's Office, Carol E. Wilson, Executrix of the Estate of Florence Graham,

conveyed title to the East Fourth Street Property (the "East Fourth Street Property") to Jacob A. Hiatt and Marzella K. Hiatt, husband and wife. [Filing No. 12 at 8.]

Via a document entitled "Quitclaim Deed" and recorded on March 9, 2010, with the Hamilton County Recorder's Office, Ms. Hiatt conveyed her one-half interest in the East Fourth Street Property to Mr. Hiatt. [Filing No. 12 at 9.] There is no evidence that Mr. Hiatt provided any consideration to Ms. Hiatt in connection with such transfer.

## IV.
### DISCUSSION

As discussed above, Defendants failed to respond to the merits of the Government's Motion for Summary Judgment. Mr. Hiatt did not file a response, and Ms. Hiatt did not address the merits of the Government's motion in her response. Both Defendants have therefore waived any legal arguments contesting the Government's position. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as [Defendants have] done here—results in waiver"); *see also Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013).

The Court will proceed by addressing in turn each request for relief sought by the Government. [*See* Filing No. 42-17.] Given that Defendants have conceded the Government's version of the facts and waived any legal arguments contesting the Government's position, the Court ultimately concludes that the Government is entitled to all of the relief it seeks.

**A. The Government is entitled to a personal judgment against Ms. Hiatt for unpaid federal income taxes and the interest therefrom for the 1996 through 2006 taxable years in the amount of $694,938.41 plus interest from and after February 18, 2014.**

An IRS Form 4340 establishes a presumptively valid tax assessment. *See United States v. Wesselman*, 406 Fed. Appx. 64, 66 (7th Cir. 2010) ("[T]he IRS may submit Certificates of

14

Assessments and Payments on Form 4340, which details the assessments, and these Form 4340s are presumptive proof of a valid assessment."). A valid tax assessment is "entitled to a legal presumption of correctness," *United States v. Williams*, 2012 WL 4505881, *4 (S.D. Ind. 2012), that "the taxpayer has the burden of proving otherwise," *JPMorgan Chase & Co. v. C.I.R.*, 530 F.3d 634, 638 (7th Cir. 2008) (citation and quotation marks omitted).

The Government submitted IRS Form 4340s reflecting the tax assessments made against Ms. Hiatt for each of the tax years in question. [*See* Filing No. 42-3 (1996); Filing No. 42-4 (1997); Filing No. 42-5 (1998); Filing No. 42-6 (1999); Filing No. 42-7 (2000); Filing No. 42-8 (2001); Filing No. 42-9 (2002); Filing No. 42-10 (2003); Filing No. 42-11 (2004); Filing No. 42-12 (2005); Filing No. 42-13 (2006).] Because Ms. Hiatt does attempt to rebut this presumption (by not responding to the merits of the Government's motion), the Court concludes that the tax assessments correctly ascertain Ms. Hiatt's unpaid tax liability for each of the years in question. For these reasons, the Government is entitled to judgment in the amount of $694,938.41. [Filing No. 42-2 at 1-2.] The amount set forth for each tax year reflects the taxes and interest thereon, calculated pursuant to 26 U.S.C. §§ 6601, 6651 as of February 18, 2014.

> **B. The Government's claims against Ms. Hiatt for unpaid federal income taxes were exempted from discharge in Ms. Hiatt's bankruptcy pursuant to 11 U.S.C. § 523(a)(1)(B)(i).**

A debt "for a tax" is not discharged if "a return . . . (i) was not filed or given." 11 U.S.C. § 523(a)(1)(B). The term "'return' means a return that satisfies the requirements of applicable nonbankruptcy law." *Id.* § 523(a). To be deemed a return under nonbankruptcy law, "a document filed with the IRS must (1) purport to be a 'return,' (2) be signed under penalty of perjury, (3) contain enough information to enable the taxpayer's tax liability to be calculated, and (4) evince[]

an honest and genuine endeavor to satisfy the law." *In re Payne*, 431 F.3d 1055, 1057 (7th Cir. 2005).

Ms. Hiatt did not file a valid tax return for any of the taxable years from 1996 through 2006. [Filing No. 42-1 at 1.] Even though Ms. Hiatt filed tax returns with the IRS in 1999, 2000, 2001, and 2002, the undisputed evidence shows that those returns were invalid and thus no assessment of tax liability was calculable. [Filing No. 42-1 at 1.] Accordingly, a "return" was not filed for any of the years from 1996 to 2006, *see In re Payne*, 431 F.3d at 1057, so Ms. Hiatt's federal income tax liability was not discharged in bankruptcy, 11 U.S.C. § 523(a)(1)(B).[2]

**C.  Federal tax liens securing Ms. Hiatt's unpaid federal income taxes, statutory additions, penalties and interest attached to a one-half interest in each of the three Sheridan Properties, and those liens are valid and enforceable.**

"If a taxpayer does not pay an assessed tax liability after receiving notice of assessment and demand for payment, a lien for the unpaid taxes attaches on all property belonging to the taxpayer." *Williams*, 2012 WL 4505881, at *4 (citing 26 U.S.C. §§ 6321, 6322; *Wesselman*, 406 Fed. Appx. at 65). "[T]he lien imposed by [26 U.S.C. §] 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed . . . is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322.

Defendants jointly acquired the three Sheridan Properties in 1969, 1992, and 2001, respectively. [Filing No. 12 at 7-8.] From 2000 to 2008, the IRS made assessments against Ms. Hiatt at various times for each of the taxable years from 1996 to 2006.[3] [Filing No. 42-1 at 2-3.]

---

[2] The Government concedes that penalties and interest owed on the penalties were discharged in the bankruptcy, [Filing No. 43 at 14; Filing No. 42-2 at 1-2], which accounts for the difference in the amount owed by Ms. Hiatt personally, and the amount of the liens.

[3] The Government concedes that the federal tax lien for the 1996 taxable year was "self-released." [Filing No. 43 at 7 n.3; Filing No. 43 at 20 n.6.] Therefore, the Government "is not enforcing such lien against the Sheridan Properties in this action." [Filing No. 43 at 20 n.6.]

16

Ms. Hiatt received notices of each assessment and demands for their payment, but did not pay the assessed taxes. [Filing No. 42-1 at 3-5.] Because Ms. Hiatt received notice and demand for payment, a federal tax lien attached to "all property belonging to [Ms. Hiatt]." *Williams*, 2012 WL 4505881, at *4. The assessments were made when Ms. Hiatt owned a one-half interest in the Sheridan Properties, and thus liens attached to those properties at the time each assessment was made. *See* 26 U.S.C. § 6322.

The Court recognizes that Ms. Hiatt has since transferred her interest in the Sheridan Properties to Mr. Hiatt. As a general matter, "[t]he transfer of property subsequent to the attachment of the lien does not affect the lien, that no matter into whose hands the property goes, it passes cum onere." *United States v. Bess*, 357 U.S. 51, 57 (1958); *see United States v. Librizzi, 108 F.3d 136, 138 (7th Cir. 1997)*. However, "[t]he lien imposed by section 6321 shall not be valid as against any purchaser . . . until [appropriate] notice thereof . . . has been filed by the Secretary." 26 U.S.C. § 6323(a). To qualify as a "purchaser," an individual must acquire the property "for adequate and full consideration in money." 26 U.S.C. § 6323(h)(6).

As stated above, a federal tax lien attached to the Sheridan Properties pursuant to 26 U.S.C. § 6321. There is no evidence that Mr. Hiatt acquired Ms. Hiatt's one-half interest in the properties "for adequate and full consideration in money," 26 U.S.C. § 6323(h)(6), and thus Mr. Hiatt does not qualify as a purchaser § 6323(a). The general rule is therefore applicable, and the lien remains attached to a one-half interest in the Sheridan Properties. *See Bess*, 357 U.S. at 57.

**D. The federal tax liens are not affected by the discharge entered in Ms. Hiatt's bankruptcy case. The liens equal the amount of income tax liabilities for the taxable years of 1997 through 2006, totaling $956,253.71, and also equal the tax penalty liabilities for the taxable years 1999, 2000, 2002, 2003, 2004, 2005, and 2006, totaling $11,233.80. Each of these totals are as of February 18, 2014, and do not include statutory additions, penalties, and interest that continue to accrue until the liens are satisfied.**

The Court agrees with the Government that the bankruptcy did not affect the federal tax liens. *See Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*."). Unlike the personal judgment against Ms. Hiatt, the federal tax liens equal the amount of tax owed "including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto." 26 U.S.C. § 6321. The Government's evidence detailed above shows that, as of February 18, 2014, and including statutory additions, penalties and interest, federal tax liens secure $956,253.71 in income tax liabilities and $11,233.80 in § 6702 frivolous tax submission penalties. [Filing No. 42-1 at 4; Filing No. 42-1 at 5-6.]

**E. The Government is entitled to enforce the federal tax liens referenced above through judicial sales of the Sheridan Properties in order to collect the amounts reference in Part IV.D above. After the costs of sale are satisfied, and any real estate taxes due under 26 U.S.C. § 6323(b)(6) are paid, the Government is entitled to one-half of the sale proceeds from each sale, which it may apply to the tax debts of Ms. Hiatt in its discretion, and Mr. Hiatt is entitled to the other one-half of the sale proceeds from each sale.**

The Court also agrees with the Government that the Court can authorize the sale of property subject to federal tax liens. *See* 26 U.S.C. § 7430(c); *United States v. Rodgers*, 461 U.S. 677, 694 (1983). "[I]f the government prevails on the merits" of its suit to enforce a federal tax lien, "the court 'may decree a sale of such property [i.e., the property against which the lien was filed], by the proper officer of the court, and a distribution of the proceeds of such sale according to the

findings of the court in respect to the interests of the parties and of the United States.'" *Williams*, 2012 WL 4505881, at *11 (second alteration in original) (quoting 26 U.S.C. § 7403(c)). As determined above, the Government has prevailed on the merits, and the Court therefore grants the Government's request for a judicial sale of the Sheridan Properties to satisfy Ms. Hiatt's outstanding tax liabilities.

Although Mr. Hiatt is the current owner of the Sheridan Properties, he did not respond to the Government's Motion for Summary Judgment. Nevertheless, the Government acknowledges that Mr. Hiatt "is entitled to one-half of the net proceeds from the sales of [the Sheridan Properties]." [Filing No. 43 at 23.] The remaining one-half of the proceeds may be apportioned by the IRS "as it sees fit." *United States v. Schroeder*, 900 F.2d 1144, 1149 (7th Cir. 1990).

## V.
### CONCLUSION

For the reasons stated herein, the Government's Motion for Summary Judgment is **GRANTED**. [Filing No. 42.] Final judgment will issue accordingly.

September 4, 2014

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF to all counsel of record**